**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
CASE NO.:

KEVON ALEXANDER,

      Plaintiff,

v.

INSITUFORM TECHNOLOGIES, LLC,
a Foreign Limited Liability Company,

      Defendant.

_____/

## COMPLAINT

Plaintiff, KEVON ALEXANDER ("ALEXANDER" or Plaintiff), by and through his undersigned counsel, hereby files this Complaint against Defendant, INSITUFORM TECHNOLOGIES, LLC (hereinafter "INSITUFORM" or "Defendant") and says:

## JURISDICTION AND VENUE

1.      This action is brought against Defendant for its unlawful employment practices pursuant to the Title VII of the Civil Rights Act of 1964 ("Title VII"), § 706(f) (42 U.S.C. § 2000e-5(f)), which incorporates by reference the Civil Rights Act of 1964 codified at 42 U.S.C. §§ 2000e, *et seq.*, and the Florida Civil Rights Act ("FCRA"), Chapter 760, Fla. Stat.

2.      This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c), because Plaintiff was employed by Defendant in this District; because Defendant, at all material times, conducted and continues to conduct business in the Middle District of Florida; because the actions which give rise to Plaintiff's claims happened within the Middle District of Florida; and because Defendant is subject to personal jurisdiction herein.

1

4.      All conditions precedent to this action have been performed or waived.

**PARTIES**

5.      Plaintiff is a resident of Broward County, Florida, over the age of 18 years and otherwise *suis juris*. During all times relevant to this Complaint, Plaintiff was employed by Defendant as a foreman.

6.      Plaintiff is a male who experienced disparate treatment, hostile work environment, and retaliation on the basis of his race. Plaintiff is therefore a member of a class protected under the Title VII and the FCRA because the terms, conditions, and privileges of his employment were altered because of his race.

7.      Defendant is a Foreign limited liability company registered to do business within Florida, with its principal place of business in Chesterfield, Missouri. Defendant has, at all times material hereto, conducted substantial and continuous business within the Middle District of Florida, and is subject to the laws of the United States and the State of Florida.

8.      Defendant has, at all times material, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. §760.02(7)).

9.      Plaintiff has exhausted his administrative remedies by filing a timely charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") which was dually filed with the Florida Commission on Human Relations ("FCHR") pursuant to the work-sharing agreement between the EEOC and the FCHR.

10.     Plaintiff filed his charge on or about June 15, 2020, which was no more than 300 days after the last discriminatory event occurred, to wit: April 2020.

11.     Plaintiff was issued a Notice of Suit Rights on May 28, 2021. This suit is filed in accordance with that Notice and within the applicable 90-day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

## GENERAL ALLEGATIONS

12.     Plaintiff has worked for Defendant for over ten years.

13.     Throughout his employment, Plaintiff has worked at different locations for Defendant.

14.     Plaintiff has also had different supervisors while employed with Defendant.

15.     In approximately 2016, Plaintiff began suffering on-going discrimination, harassment, and retaliation because of his race while Plaintiff worked at the Miami-Dade location under the supervision of Raul Amador ("Amador").

16.     Amador (Hispanic) would only promote other employees who were Hispanic, family and/or friends, even though they were not qualified for the position(s).

17.     Amador refused to promote Plaintiff because Plaintiff did not speak Spanish and gave Spanish speaking employees preferential treatment over Plaintiff.

18.     Amador routinely singled out Plaintiff, the African American on a mostly Hispanic crew, for cell phone usage. Plaintiff's Hispanic co-workers were not reprimanded for cell phone usage, which was a part of the company culture.

19.     Plaintiff was further singled out for failure to wear safety equipment. However, Defendant, was never personally told of his failure to wear basic safety equipment. Many of Plaintiff's Hispanic co-workers also failed to wear basic safety equipment, but were not reprimanded.

20.     In 2018, Plaintiff had an incident with another co-worker, Jon Cannon ("Cannon"). Cannon overheard a private conversation Plaintiff had with another co-worker, where Plaintiff used profanities that were common and culturally accepted in the workplace.

21.     Upon hearing the conversation, Cannon made a point to come out of his office and interject himself into the conversation to tell Plaintiff he heard what he said, referring to the use of profanities.

22.     Shortly after the incident, Plaintiff went into Cannon's office to apologize. In response, Cannon made a racially derogatory statement referring to Plaintiff as a "you people."

23.     Plaintiff reported the racially derogatory statement to the HR Department.

24.     A representative from HR, while in town for a safety class, inquired about the incident with Cannon. Plaintiff's co-worker told the HR representative that she was not offended by Plaintiff's language.

25.     After this incident with Cannon, Defendant began issuing meritless write-ups in an act of retaliation for reporting the incident.

26.     After failing to receive a promotion in April of 2019, or an adequate raise for quite some time, Plaintiff transferred to Defendant's Jacksonville location, to work under the supervision of Al Yeomans ("Yeomans").

27.     Yeomans promised Plaintiff he would receive a raise after he had worked in Jacksonville for three (3) months but Plaintiff did not receive a raise until months later.

28.     Yeomans discouraged Plaintiff from applying for a promotion claiming Plaintiff was not qualified.

29.     Yeomans hired a less-qualified white person instead of Plaintiff for the promotion.

30.     Since the new hire was less qualified, Yeomans made Plaintiff train him.

31.     Then, in or about September 2019, Plaintiff applied for a Superintendent position in Miami after receiving assurances from Amador that the hiring process would be fair.

32.     As a continued pattern of exhibiting preferential treatment towards Hispanic employees, Amador hired his less qualified, personal friend and a fellow Hispanic, for the Superintendent position.

33.     Plaintiff was notified in November 2019 that he did not get the position.

34.     Then in December 2019 or January 2020, Plaintiff found out that he was paid less than another non-supervisory employee despite being more qualified.

35.     Upon being passed over for yet another promotion and learning that he was being paid less than a co-worker, Plaintiff complained to Dawn Clements in the HR Department, and Jim Brandenstein the operations manager.

36.     Even if Defendant had legitimate, non-discriminatory reasons for its actions, Plaintiff's race was, at minimum, a motivating factor in Defendant's disparate treatment of Plaintiff including but not limited to Plaintiff being subject to meritless write-ups and racially derogatory comments; being singled out; and Defendant's decision not to promote Plaintiff despite being more qualified. [1].

37.     Plaintiff has retained the undersigned firm to prosecute this action on his behalf and has agreed to pay it a reasonable fee for its services.

38.     Plaintiff is entitled to reasonable attorneys' fees and costs if he is the prevailing party in this action.

### COUNT I: VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
### (DISCRIMINATION BASED ON RACE)

---

[1] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

39.     Plaintiff re-alleges and re-avers paragraphs 1 – 38 as fully set forth herein.

40.     Plaintiff brings this action under Title VII for damages caused by Defendant's disparate treatment of Plaintiff on the basis of race.

41.     Plaintiff is a member of a protected class, to wit, African American/black.

42.     Since the beginning of Plaintiff's employment with Defendant, Plaintiff experienced discriminatory treatment due to Plaintiff's race.

43.     Amador consistently treated Plaintiff less favorably than Plaintiff's Hispanic co-workers. Specifically, Amador refused to promote Plaintiff because Plaintiff was not Hispanic and did not speak Spanish and was subjected to meritless write-ups.

44.     Yeomans also refused to promote Plaintiff based on his race and instead hired a white applicant who was less qualified.

45.     As further support Plaintiff was treated differently based on his race, he was paid less than a Hispanic co-worker who did not have Plaintiff's qualifications.

46.     Due to the disparate treatment inflicted on Plaintiff on the basis of his race, Plaintiff was repeatedly denied a promotion, received lower pay than his co-workers and was forced to endure a hostile work environment.

47.     Defendant's reasons for Plaintiff's meritless write-ups, lower pay and for not promoting Plaintiff were pretextual.

48.     Even if Defendant had a legitimate, non-discriminatory reasons, Plaintiff's race was, at minimum, a motivating factor in Defendant's adverse employment decisions.

49.     Defendant, including its supervisors, Amador and Yeomans, acted with intentional disregard for Plaintiff's rights as an African American protected under Title VII.

Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Amador and Yeomans, and/or other employees.

50.     Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII of the Civil Rights Act of 1964, § 706(g) as a direct result of Defendant's discriminatory actions.

51.     Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for his protected rights under Title VII. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff KEVON ALEXANDER requests that:

a.  The Court grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including injury to his professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the Title VII;

b.  The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c.  The Court award Plaintiff the costs of this action, together with his reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d.  The Court award Plaintiff such other and further relief as the Court deems appropriate.

## COUNT II: VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
## (HOSTILE WORK ENVIRONMENT)

52.     Plaintiff re-alleges and re-avers paragraphs 1 – 38 as fully set forth herein.

53.     Plaintiff brings this action under the Title VII for damages caused by Defendant's unlawful employment practices committed against Plaintiff by allowing and ratifying the disparate treatment Defendant's supervisors inflicted on Plaintiff on the basis of race.

54.     Plaintiff is a member of a protected class, to wit, African American/black.

55.     Plaintiff experienced a series of discriminatory treatment from Defendant including his direct supervisors, Amador and Yeomans, due to Plaintiff's race.

56.     Amador and Yeomans constantly treated Plaintiff less favorably than Plaintiff's Hispanic co-workers. Specifically, Amador hired less qualified applicants over Plaintiff in order to hire Hispanic Spanish speaking persons. Amador held Plaintiff to a higher standard than Plaintiff's Hispanic co-workers and refused to promote Plaintiff, although Plaintiff was qualified for the position. While under the direct supervision of Yeomans, Plaintiff was again denied promotions while a less qualified white applicant was offered the job.

57.     Moreover, Plaintiff was subjected to racially derogatory comments made by another co-worker, Cannon.

58.     Amador and Yeomans were Plaintiff's direct supervisors during Plaintiff's employment with Defendant during the times alleged by Plaintiff above. Amador and Yeomans' repeated and consistent disparate treatment of Plaintiff, was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive. Defendant's supervisors' conduct was severe and pervasive from both a subjective and objective perspective.

59.     Defendant, including its supervisors, Amador and Yeomans, acted with intentional disregard for Plaintiff's rights as an African American person protected under Title VII. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Amador and Yeomans.

60.     Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII as a direct result of Defendant's discriminatory actions.

61.     Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for his protected rights under Title VII of the Civil Rights Act of 1964. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff KEVON ALEXANDER requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including injury to his professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, § 706(g);

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with his reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d.  The Court award Plaintiff such other and further relief as the Court deems appropriate.

## COUNT III: VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
## (RETALIATION)

62.    Plaintiff re-alleges and re-avers paragraphs 1 – 38 as fully set forth herein.

63.    Plaintiff brings this action for retaliation in violation of Title VII.

64.    Plaintiff had been experiencing discriminatory treatment because Plaintiff is African American.

65.    Plaintiff complained about the discriminatory treatment due to his race on several occasions including but not limited to HR department following the 2018 incident with Cannon and following Defendant's decision not to hire him for a promotion to Superintendent around the end of 2019.

66.    As a result of Plaintiff's complaints, Defendant issued meritless write-ups against, paid Plaintiff less, and passed Plaintiff over for promotions.

67.    Defendant's reasons for Plaintiff's meritless write-ups, lower pay, and for not promoting Plaintiff were pretextual.

68.    The meritless write-ups, failure to promote, and lower pay than co-workers all constitute an adverse employment actions under Title VII.

69.    Defendant's actions were done with malice, and with disregard for Plaintiff's rights under Title VII. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Amador, Yeomans and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff KEVON ALEXANDER requests that:

a.  The Court grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including injury to his professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, § 706(g);

b.  The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c.  The Court award Plaintiff the costs of this action, together with his reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d.  The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT IV: VIOLATION OF FCRA**
**(DISCRIMINATION BASED ON RACE)**

70.   Plaintiff re-alleges and re-avers paragraphs 1 – 38 as fully set forth herein.

71.   Plaintiff brings this action under the Florida Civil Rights Act ("FCRA"), Fla. Stats. § 760.01 *et seq.*, for damages caused by Defendant's disparate treatment of Plaintiff.

72.   Plaintiff is a member of a protected class, to wit, African American/black.

73.   Since the beginning of Plaintiff's employment with Defendant, Plaintiff experienced discriminatory treatment due to Plaintiff's race.

74.   Amador constantly treated Plaintiff less favorably than Plaintiff's Hispanic co-workers. Specifically, Amador refused to promote Plaintiff because Plaintiff was not Hispanic and did not speak Spanish and was subjected to meritless write-ups.

75.     Yeomans also refused to promote Plaintiff based on his race and instead hired a white applicant who was less qualified.

76.     As further support Plaintiff was treated differently based on his race, he was paid less than a Hispanic co-worker who did not have Plaintiff's qualifications.

77.     Due to the disparate treatment inflicted on Plaintiff on the basis of his race, Plaintiff was repeatedly denied a promotion, received lower pay than his co-workers and was forced to endure a hostile work environment.

78.     Defendant's reasons for Plaintiff's meritless write-ups, lower pay and for not promoting Plaintiff were pretextual.

79.     Even if Defendant had a legitimate, non-discriminatory reasons, Plaintiff's race was, at minimum, a motivating factor in Defendant's adverse employment decisions.

80.     Defendant, including its supervisors, Amador and Yeomans, acted with intentional disregard for Plaintiff's rights as an African American/black person protected under FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Amador and Yeomans.

81.     Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of FCRA.

82.     Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for his protected rights under FCRA. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff KEVON ALEXANDER requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including injury to his professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT V: VIOLATION OF FCRA**
**(HOSTILE WORK ENVIRONMENT)**

83.    Plaintiff re-alleges and re-avers paragraphs 1 – 38 as fully set forth herein.

84.    Plaintiff brings this action under FCRA for damages caused by Defendant's unlawful employment practices committed against Plaintiff by allowing and ratifying the disparate treatment Defendant's supervisors inflicted on Plaintiff on the basis of race.

85.    Plaintiff is a member of a protected class, to wit, African American/black.

86.    Plaintiff experienced a series of discriminatory treatment from Defendant including his direct supervisors, Amador and Yeomans, due to Plaintiff's race.

87.    Amador and Yeomans constantly treated Plaintiff less favorably than Plaintiff's Hispanic co-workers. Specifically, Amador hired less qualified applicants over Plaintiff in order

to hire Hispanic Spanish speaking persons. Amador held Plaintiff to a higher standard than Plaintiff's Hispanic co-workers and refused to promote Plaintiff, although Plaintiff was qualified for the position. While under the direct supervision of Yeomans, Plaintiff was again denied promotions while a less qualified white applicant was offered the job.

88.     Moreover, Plaintiff was subjected to racially derogatory comments made by another co-worker, Cannon.

89.     Amador and Yeomans were Plaintiff's direct supervisors during Plaintiff's employment with Defendant during the times alleged by Plaintiff above. Amador and Yeomans' repeated and consistent disparate treatment of Plaintiff, was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive. Defendant's supervisors' conduct was severe and pervasive from both a subjective and objective perspective.

90.     Defendant, including its supervisor, Amador and Yeomans, acted with intentional disregard for Plaintiff's rights as an African American person protected under FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Amador and Yeomans.

91.     Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of FCRA as a direct result of Defendant's discriminatory actions.

92.     Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for his protected rights under FCRA.  Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff KEVON ALEXANDER requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate his for past and future pecuniary losses, including injury to his professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with reasonable attorneys' fees incurred herein, pursuant to the applicable statute; and

d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT VI: VIOLATION OF FCRA**
**(RETALIATION)**

93.     Plaintiff re-alleges and re-avers paragraphs 1 – 38 as fully set forth herein.

94.     Plaintiff brings this action for retaliation in violation of FCRA.

95.     Plaintiff had been experiencing discriminatory treatment because Plaintiff is African American.

96.     Plaintiff complained about the discriminatory treatment due to his race on several occasions including but not limited to HR department following the 2018 incident with Cannon and following Defendant's decision not to hire him for a promotion to Superintendent around the end of 2019.

97.     As a result of Plaintiff's complaints, Defendant issued meritless write-ups against, paid Plaintiff less, and passed Plaintiff over for promotions.

98.     Defendant's reasons for Plaintiff's meritless write-ups, lower pay and for not promoting Plaintiff were pretextual.

99.     The meritless write-ups, failure to promote, and lower pay than co-workers all constitute an adverse employment actions under FCRA.

100.     Defendant's actions were done with malice, and with disregard for Plaintiff's rights under FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Amador, Yeomans and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff KEVON ALEXANDER requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including injury to his professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with his reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d.  The Court award Plaintiff such other and further relief as the Court deems

appropriate.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff KEVON ALEXANDER hereby demands trial by jury on all issues and all

counts of this Complaint so triable as a matter of right.

Dated: August 16, 2021

LAW OFFICES OF CHARLES EISS, P.L.
Attorneys for Plaintiff
7951 SW 6th Street, Suite 112
Plantation, Florida 33324
(954) 914-7890 (Office)
(855) 423-5298 (Facsimile)

By:     /s/ Charles M. Eiss
CHARLES M. EISS, Esq.
Fla. Bar #612073
chuck@icelawfirm.com
SHANNA WALL, Esq.
Fla. Bar #0051672
shanna@icelawfirm.com